**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
 *Plaintiff-Appellant*,

v.

FRANCISCA RODRIGUEZ-GAMBOA,
 *Defendant-Appellee.*

No. 19-50014

D.C. No.
2:18-cr-00379-
ODW-1

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted July 8, 2020
Pasadena, California

Filed August 27, 2020

Before: Kim McLane Wardlaw and Andrew D. Hurwitz,
Circuit Judges, and Joseph F. Bataillon,* District Judge.

Opinion by Judge Hurwitz

---

 *The Honorable Joseph F. Bataillon, United States District Judge
for the District of Nebraska, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel reversed the district court's dismissal of an information charging illegal reentry in violation of 8 U.S.C. § 1326, and remanded for further proceedings, in a case in which the defendant was previously removed because of an "aggravated felony" conviction—possession for sale of methamphetamine in violation of California Health & Safety Code § 11378.

The defendant sought dismissal of the information on the ground that Section 11378 is categorically overbroad because the definition of methamphetamine under California law includes optical and geometric isomers, while the federal comparator statute covers only the optical isomer. On limited remand, the district court held an evidentiary hearing at which it heard unrebutted expert testimony, and concluded that there is no such thing as a geometric isomer of methamphetamine.

The panel held that the district court's factual finding that geometric isomers of methamphetamine do not exist, which it reviewed for clear error, finds overwhelming support in the record; and rejected the argument that the California statute's facial inclusion of "geometrical" isomers of methamphetamine reflects a legislative determination that such isomers actually exist.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel addressed the legal issue whether the factual impossibility of a state statute being applied more broadly than a federal comparator means there is a categorical match between the two, even if the state statute is textually overbroad. Finding *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007), most instructive, the panel wrote that, based on the evidentiary record, there is simply no "realistic probability"—nor even a theoretical one—of the defendant facing liability under California law for the possession of geometric isomers of methamphetamine. The panel explained that the purpose of the categorical approach is to ascertain whether the defendant was necessarily convicted in state court of conduct that would also violate the relevant federal law, and wrote that if there is no realistic probability that this is not the case, the goal of the inquiry is surely satisfied. The panel concluded that because geometric isomers of methamphetamine are impossible, there is no realistic probability that the defendant's California methamphetamine statute of conviction will be used to prosecute someone in connection with geometric isomers of methamphetamine.

## COUNSEL

L. Ashley Aull (argued), Chief, Criminal Appeals Section; Brandon D. Fox, Chief, Criminal Division; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellant.

David Menninger (argued), Deputy Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellee.

## OPINION

HURWITZ, Circuit Judge:

This appeal requires us to delve once again into the mysteries of the "categorical approach" to determine whether a conviction under state law qualifies as a generic federal offense. *See Taylor v. United States*, 495 U.S. 575, 602 (1990). The two statutes at issue today both prohibit the possession of methamphetamine for sale. California law prohibits the possession for sale of both the geometric and optical isomers of methamphetamine. Cal. Health & Safety Code §§ 11033, 11055(d)(2), 11378.[1] The relevant federal law, however, outlaws, possession only of methamphetamine's optical isomers. 21 U.S.C. §§ 802(14), 812(c), Schedule II(c), Schedule III(a)(3). Because the state law's "greater breadth is evident from its text," our traditional jurisprudence would suggest that it is not a categorical match to the federal law. *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc), *abrogated on other grounds by United States v. Stitt*, 139 S. Ct. 399 (2018).

But we face an unusual situation today. At our request, the district court conducted an evidentiary hearing and, after hearing unrebutted expert testimony, concluded that there is no such thing as a geometric isomer of methamphetamine. The Supreme Court has pointedly instructed that the categorical approach should not be applied in a legal vacuum and that a finding of overbreadth "requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic

---

[1] The California statute refers to "geometrical" isomers. Cal. Health & Safety Code § 11033. As do the parties and the district court, we use the terms "geometric" and "geometrical" interchangeably.

definition of a crime." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). Because there is no such possibility here, we opt for scientific reality over abstract legal doctrine and reverse the district court's dismissal of the information charging Rodriguez with illegal reentry under 8 U.S.C. § 1326.

## I.

We described the facts and procedural history of this case in a prior opinion, *United States v. Rodriguez-Gamboa*, 946 F.3d 548 (9th Cir. 2019), and therefore recount them more briefly here. In 2017, Francisca Rodriguez-Gamboa, a native and citizen of Mexico, was removed because of an "aggravated felony" conviction—possession for sale of methamphetamine in violation of California Health & Safety Code § 11378.

Rodriguez later reentered the United States without inspection. In 2018, she was charged in a criminal complaint with illegal reentry in violation of 8 U.S.C. § 1326. Although she initially waived indictment and pleaded guilty, Rodriguez moved to withdraw her plea and dismiss the information after we issued our opinion in *Lorenzo v. Sessions*, holding that possession of methamphetamine for sale under California Health & Safety Code § 11378 "does not qualify as a controlled substance offense under 8 U.S.C. § 1227(a)(2)(B)(i)." 902 F.3d 930, 933 (9th Cir. 2018). *Lorenzo* found the California statute categorically overbroad because the definition of certain controlled substances, including methamphetamine, under California law includes both optical and geometric isomers, Cal. Health & Safety Code §§ 11033, 11055(d)(2), while the comparator federal statute, the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 802(14), 812(c), Schedule II(c), Schedule III(a)(3), covers only the optical isomer. 902 F.3d at 935–36.

In opposition to Rodriguez's motion, the government argued that the California statute's apparent overbreadth was illusory because geometric isomers of methamphetamine do not exist. The government submitted two expert declarations in support of that position. The district court noted that geometric isomers of methamphetamine may not exist but held that it was bound by *Lorenzo*. The court therefore allowed Rodriguez to withdraw her plea and entered an order dismissing the information.

After the district court entered its order, the opinion in *Lorenzo* was withdrawn, *Lorenzo v. Whitaker*, 913 F.3d 930 (9th Cir. 2019) (order), and replaced with a non-precedential memorandum disposition, *Lorenzo v. Whitaker*, 752 F. App'x 482 (9th Cir. 2019). The memorandum disposition reached the same result as the opinion, but pretermitted the government's argument that "the facial overbreadth in California law is of no significance because geometric isomers of methamphetamine do not in fact exist" because it was raised for the first time in a petition for panel rehearing. *Id.* at 485. The panel, however "d[id] not foreclose the government from presenting its new argument or new evidence in another case." *Id.*

In our prior opinion in this case, we held that the district court did not abuse its discretion in permitting Rodriguez to withdraw her guilty plea. *Rodriguez-Gamboa*, 946 F.3d at 551. However, we vacated the dismissal of the information, noting that the opinion on which the district court had relied had been replaced by a memorandum disposition that left the government free to raise an argument in a future case that geometric isomers of methamphetamine do not exist. *Id.* at 552. We remanded to the district court for the limited purpose of addressing that issue. *Id.* at 552–53.

On remand, the district court held an evidentiary hearing at which the government presented testimony and declarations from three experts in organic chemistry: Dr. Travis Williams, professor of chemistry at the University of Southern California, Dr. Brian Stoltz, professor of chemistry at the California Institute of Technology, and Dr. Daniel Willenbring, a drug science specialist with the Drug Enforcement Administration. All stated that there are no geometric isomers of methamphetamine. Rodriguez presented no rebuttal experts. Accepting the experts' testimony, the district court concluded that, because methamphetamine "lacks [certain] structural features," "geometric isomers" of methamphetamine "are impossible." We then reassumed jurisdiction over this appeal.

## II.

The district court's factual finding that geometric isomers of methamphetamine do not exist, which we review for clear error, *see United States v. Hinkson*, 585 F.3d 1247, 1259–60 (9th Cir. 2009) (en banc), finds overwhelming support in the record. It is grounded in unrebutted expert testimony that because of the chemical structure of the methamphetamine molecule, methamphetamine cannot "possibly have geometric isomers."

Rodriguez's attempt to poke holes in the district court's factual finding fails. She argues that the district court should have interpreted the term "geometrical" isomer in California Health & Safety Code § 11033 as synonymous with a diastereomeric isomer, pointing to the parenthetical that follows the term "geometrical" in the California statute— "geometrical (diastereomeric) isomers." Rodriguez then cites the testimony of one expert that deuterium-labelled methamphetamine can have diastereomers. But, the

unrebutted expert testimony was that although geometric isomers are a subtype of diastereomers, not all diastereomers are geometric. And, consistent with that testimony, the district court held that deuterium-labeled methamphetamine does not contain geometric isomers.[2]

We also reject the argument that the California statute's facial inclusion of "geometrical" isomers of methamphetamine reflects a legislative determination that such isomers actually exist. Section 11378 prohibits possession for sale of a number of controlled substances and their "isomers." Cal. Health & Safety Code §§ 11055(d)(2)–(4), (e), 11378. The term "isomer" is in turn defined in California Health & Safety Code § 11033 as "includ[ing] optical and geometrical (diastereomeric) isomers." That catch-all definition applies to all controlled substances with isomers, "except as otherwise defined," *id.*, and is thus plainly designed not as a legislative finding that methamphetamine has a geometrical isomer, but rather to ensure that all isomers of the banned substances are covered.

## III.

Having resolved all other issues relevant to this appeal in our prior opinion, *Rodriguez-Gamboa*, 946 F.3d at 551–53, we now must confront the legal import of the district court's factual finding. The ultimate legal issue is whether the factual impossibility of a state statute being applied more

---

[2] For the same reasons, we also reject Rodriguez's argument that the term "geometrical" in California Health & Safety Code § 11033 is defined by the parenthetical "(diastereomeric)." Because all geometrical isomers are diastereomeric, the parenthetical term is simply descriptive and does not suggest that all diastereomeric isomers are geometric. *See Tyler v. Cain*, 533 U.S. 656, 662 (2001) ("We do not . . . construe the meaning of statutory terms in a vacuum.").

broadly than a federal comparator means there is a categorical match between the two, even if the state statute is textually overbroad.

"Under the categorical approach, we compare the elements of the crime to the generic" federal offense. *Hernandez-Gonzalez v. Holder*, 778 F.3d 793, 801 (9th Cir. 2015) (cleaned up). A conviction under a state statute is a categorical match only "if the state statute—regardless of its 'exact definition or label'—'substantially corresponds' to or is narrower than" the generic federal offense. *Quarles v. United States*, 139 S. Ct. 1872, 1877 (2019) (quoting *Taylor*, 495 U.S. at 599, 602). If the state statute regulates more conduct than the federal offense, it is overbroad, and a defendant convicted under the state statute is not removable for having committed an aggravated felony. *See Rendon v. Holder*, 764 F.3d 1077, 1083 (9th Cir. 2014).

As we recognized in our prior opinion, *Rodriguez-Gamboa*, 946 F.3d at 551–52, California law prohibits the possession for sale of methamphetamine or its "optical and geometrical" isomers, Cal. Health & Safety Code §§ 11033, 11055(d)(2), 11378, while the CSA mentions only methamphetamine's "optical isomer[s]," 21 U.S.C. §§ 802(14), 812(c) Schedule II(c), Schedule III(a)(3). Thus, the California statute textually appears to criminalize more conduct than the federal one.

Rodriguez argues that this ends the analysis. Her argument finds some support in the language of our prior opinions, such as *Grisel*, in which we held that Oregon second-degree burglary was not a burglary offense under the Armed Career Criminal Act because "[t]he text of the statute expressly includes in its definition that which the Supreme Court expressly excluded from the generic, federal definition," such as burglary of a booth, vehicle, and aircraft.

488 F.3d at 850.  We stated that if "a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime" and a statute's overbreadth "is evident from its text."  *Id.* (quoting *Duenas-Alvarez*, 549 U.S. at 193).

But, the overbroad portion of the state statute at issue in *Grisel* did not criminalize conduct that could not possibly occur.  Burglary of a booth, vehicle, or aircraft is possible, albeit perhaps unlikely.  Our cases applying *Grisel* similarly have involved state laws forbidding conduct that was factually possible, even if unlikely to be the subject of a charge.  *See, e.g.*, *Barrera-Lima v. Sessions*, 901 F.3d 1108, 1120 & n.11 (9th Cir. 2018) (finding Washington's indecent exposure statute overbroad because it included acts such as "flashing a passerby for shock value" and "mooning someone out a window" (cleaned up)); *United States v. Brown*, 879 F.3d 1043, 1048 & n.2, 1049–50 (9th Cir. 2018) (finding Washington state drug conspiracy statute overbroad because it included a conspiracy where the "only alleged coconspirator is a federal agent or informant"); *United States v. Jennings*, 515 F.3d 980, 989 n.9 (9th Cir. 2008) (finding Washington statute overbroad because it "explicitly encompasses conduct that does not present a potential risk of harm to others").

*Grisel* thus simply stands for the proposition that "[a]s long as the application of the statute's express text in the nongeneric manner is not a logical impossibility, the relative likelihood of application to nongeneric conduct is immaterial." *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1147 (9th Cir. 2020) (citing *United States v. Valdivia-Flores*, 876 F.3d 1201, 1208 (9th Cir. 2017)); *see Robles-Urrea v.*

*Holder*, 678 F.3d 702, 707 (9th Cir. 2012) ("In order to hold that the statute of conviction is overbroad, we must determine that there is a realistic probability of its application to conduct that falls beyond the scope of the generic federal offense." (cleaned up)).  It does not aid us in applying the categorical approach when there is no possibility of application of the state statute to nongeneric conduct.

In addressing the scenario today before us, we find *Duenas-Alvarez* most instructive.  In that case, the Supreme Court stated that "to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute" requires "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Duenas-Alvarez*, 549 U.S. at 193.  Here, based on the evidentiary record before us, there is simply no "realistic probability"—nor even a theoretical one—of Rodriguez facing criminal liability under California law for the possession of geometric isomers of methamphetamine.

To be sure, as Rodriguez notes, *Duenas-Alvarez* involved a state statute that facially was a categorical match to the federal generic crime, but which the petitioner argued had been applied in an overbroad manner. *See id.* at 190–91, 193.  But we read the teaching of *Duenas-Alvarez* more broadly.  The purpose of the categorical approach is to ascertain whether the defendant was necessarily convicted in state court of conduct that would also violate the relevant federal law.  If there is no "realistic probability" that this is not the case, *id.* at 193, the goal of the inquiry is surely satisfied.

Indeed, the Court has implied as much in *Moncrieffe v. Holder*, 569 U.S. 184 (2013).  There, the government

expressed concern that the Court's eventual holding would suggest that many state statutes prohibiting possession of firearms were categorically overbroad, because they did not except antiques, while the corresponding federal generic crime did. *Id.* at 205–06. The Court rejected this textual argument, reiterating that "*Duenas-Alvarez* requires that there be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Id.* (quoting *Duenas-Alvarez*, 549 U.S. at 193). Indeed, it explained further that, "to defeat the categorical approach in this manner, a noncitizen would have to demonstrate the State actually prosecutes the relevant offense in cases involving antique firearms." *Id.* at 206; *see also Dominguez v. Barr*, No. 18-72731, 2020 WL 4187377, at *9 (9th Cir. July 21, 2020) (concluding that the "inclusion" of an additional word "in Oregon's definition of manufacture does not criminalize any conduct beyond the reach of the Controlled Substances Act's definition" and therefore "[t]here is not a realistic probability that Oregon prosecutes conduct . . . that is not covered by the Controlled Substances Act[]"). Because geometric isomers of methamphetamine are impossible, there exists "no realistic probability" that Rodriguez's California methamphetamine statute of conviction will be used to prosecute someone in connection with geometric isomers of methamphetamine. *See Moncrieffe*, 569 U.S. at 206 (citation omitted).

Rodriguez also argues that because the categorical approach was designed in part to avoid fact-specific inquiries about how a given defendant committed a state crime, the evidentiary hearing we ordered in this case is

irrelevant.[3]   But the inquiry we asked the district court to conduct is quite different than looking into the facts of a crime.  We did not ask the court to determine what type of isomers of methamphetamine Rodriguez's conviction actually involved, but rather whether it was physically possible for *anyone* to possess a geometric isomer of methamphetamine.   The practical concerns with fact-specific evidentiary hearings about the defendant's state conviction that underly the categorical approach[4] are not present when the inquiry is a purely scientific one about the statute of conviction.[5]

---

[3] *See, e.g.*, *Mathis v. United States*, 136 S. Ct. 2243, 2252 (2016) (stating that under the categorical approach, the Court has "avoided any inquiry into the underlying facts of the defendant's particular offense" (cleaned up)); *Sykes v. United States*, 564 U.S. 1, 7 (2011) ("[W]hile there may be little doubt that the circumstances of the flight in Sykes' own case were violent, the question is whether § 35-44-3-3 of the Indiana Code, as a categorical matter, is a violent felony."), *overruled on other grounds by Johnson v. United States*, 579 U.S. 591 (2015).

[4] *See Taylor*, 495 U.S. at 601 ("Would the Government be permitted to introduce the trial transcript before the sentencing court, or if no transcript is available, present the testimony of witnesses?  Could the defense present witnesses of its own and argue that the jury might have returned a guilty verdict on some theory that did not require a finding that the defendant committed generic burglary?"); *United States v. Sherbondy*, 865 F.2d 996, 1008 (9th Cir. 1988) ("The problems with such hearings are evident.  Witnesses would often be describing events years past.  Such testimony is highly unreliable.").

[5] Nor are we concerned that our holding today will result in "never-ending evidentiary hearings on organic chemistry clogging our District Courts."  Because we hold, as a matter of law, that California's definition of methamphetamine is a categorical match to the definition under the federal CSA, district courts confronting the issue in the future need not repeat what occurred in this case. *See Hart v. Massanari*, 266 F.3d 1155, 1175 (9th Cir. 2001) ("A district court bound by circuit authority . . . has

**IV.**

Contrary to Rodriguez's assertions, we do not today create a split with the Seventh Circuit. In *United States v. De La Torre*, that court addressed whether an Indiana statute outlawing methamphetamine and its "isomers" was broader than the generic federal definition, which, as we have noted, only extends to the optical isomer of methamphetamine. 940 F.3d 938, 951 (7th Cir. 2019) (citations omitted). In that case, the panel declined to consider declarations from government experts about whether geometric isomers of methamphetamine exist because they were presented for the first time on appeal and crafted for other cases. *Id.* at 952. Pointedly, the court noted that its "opinion takes no position on the scientific merits, nor should it be read as limiting the government's ability to present such an argument in future proceedings." *Id.* at 952 n.5.

In *United States v. Ruth*, the Seventh Circuit recently addressed whether an Illinois statute outlawing cocaine and "its optical, positional, and geometric isomers" was broader than a federal law which only regulated its "optical and geometric isomers." No. 20-1034, 2020 WL 4045885, at *4 (7th Cir. July 20, 2020) (citations omitted). Although the court found the state statute overbroad, it expressly noted that the government had not presented evidence that the apparent overbreadth consisted entirely of impossible conduct. *Id.* at *5. More significantly, the court explicitly "left the door ajar for future science based arguments" and

---

no choice but to follow it, even if convinced that such authority was wrongly decided."). Of course, even for a state statute that is otherwise a categorical match, an offender may always show overbreadth by "point[ing] to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Duenas-Alvarez*, 549 U.S. at 193.

said that "[t]here may be an occasion where a state statute covers unquestionably nonexistent conduct, but we do not need to predetermine how that analysis will look." *Id.*

In this case, the district court held an evidentiary hearing, heard the testimony of expert witnesses, and concluded that geometric isomers of methamphetamine do not chemically exist. Because we know as a scientific fact that dragons have never existed, we would not find overbroad a state statute criminalizing the possession of dangerous animals, defined to include dragons, if the relevant federal comparator outlawed possession of the same animals but did not include dragons. We see no reason to reach a different result here.

## V.

We reverse the dismissal of the information and remand for further proceedings.

**REVERSED AND REMANDED.**