**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JOSE JAIRO ESCOBAR SANTOS,
*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,
*Respondent*.

No. 17-72334

Agency No.
A205-465-618

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted January 13, 2021[*]
San Francisco, California

Filed July 9, 2021

Before: Jay S. Bybee and Ryan D. Nelson, Circuit Judges,
and Robert H. Whaley,[**] District Judge.

Opinion by Judge Bybee;
Dissent by Judge Whaley

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

## SUMMARY[***]

### Immigration

Denying Jose Jairo Escobar Santos's petition for review of a decision of the Board of Immigration Appeals, the panel held that Escobar's forgery conviction under section 470a of the California Penal Code categorically constitutes an aggravated felony offense relating to forgery under 8 U.S.C. § 1101(a)(43)(R), thus rendering him ineligible for voluntary departure.

Section 470a penalizes "[e]very person who alters, falsifies, forges, duplicates or in any manner reproduces or counterfeits any driver's license or identification card issued by a governmental agency with the intent that such driver's license or identification card be used to facilitate the commission of any forgery."

Escobar argued that section 470a's first element sweeps more broadly than the generic definition of forgery because the proscribed conduct encompasses mere duplication or any manner of reproduction, and thus a person could be liable for photocopying a genuine driver's license with the requisite intent. The panel disagreed that photocopying a driver's license with the intent to facilitate the commission of any forgery falls outside the generic definition of forgery.

As a helpful comparison, the panel looked to *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870 (9th Cir. 2008), in which the

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

court addressed California Penal Code section 475(c), which proscribes possession of any completed check, money order, traveler's check, warrant or county order, whether real or fictitious, with the intent to utter or pass or facilitate the utterance or passage of the same, in order to defraud any person. The panel observed that in *Vizcarra-Ayala*, the court determined that an essential element of the generic offense of forgery is the false making or alteration of a document, such that the document is not what it purports to be, and that *Vizcarra-Ayala* held that section 475(c) encompassed broader conduct than the generic definition of forgery because it criminalized the possession or use of genuine instruments with the intent to defraud but not to forge. The panel observed that in *Vizcarra-Ayala*, the court identified several instances in which California used section 475(c) to prosecute such conduct.

The panel pointed out several marked differences between section 475(c) and section 470a, including that section 470a: (1) plainly does not criminalize "possession"; (2) does not include section 475(c)'s reference to "real or fictitious" instruments; and (3) does not contemplate prosecution for conduct akin to attempting to cash a genuine, unaltered check—by for example, representing another person's genuine driver's license as one's own. Moreover, the panel noted that unlike in *Vizcarra-Ayala*, Escobar did not identify, and the panel could not locate, any cases in which California had prosecuted individuals under section 470a for conduct involving genuine documents. The panel further noted that California punishes the duplication or reproduction of such identification only when it is "used to facilitate the commission of any forgery."

The panel noted that Escobar had not identified any evidence that California uses a broader definition of "forgery" than the generic understanding, and thus by definition, section 470a requires proof of a false writing capable of procuring fraud. The panel wrote that a person who takes the affirmative step to photocopy a genuine document with the intent to deceive has made a false instrument—an action that falls squarely within the generic definition of forgery.

Dissenting, District Judge Whaley noted that in *Vizcarra-Ayala*, this court held that forgery requires a lie about the document itself, and that the lie must relate to the genuineness of the document. Because CPC section 470a penalizes duplicating identification cards that are not falsely made, Judge Whaley concluded that the statute sweeps more broadly than the federal common law definition of forgery. In addition, Judge Whaley identified at least one case in which California successfully prosecuted someone where the identification card appeared to be genuine, and thus wrote that there is a realistic probability that California would apply CPC section 470a to conduct outside the common law definition of forgery. Even were he to apply the modified categorical approach, Judge Whaley wrote that his conclusion would remain unchanged because there was no indication from the administrative record, and the government did not contend otherwise, that Escobar's conviction was indisputably for forgery—as opposed to non-forgery—conduct.

**COUNSEL**

James Todd Bennett (argued), El Cerrito, California, for Petitioner.

Brian M. Boynton, Acting Assistant Attorney General; Anthony C. Payne, Assistant Director; Neelam Ihsanullah, Trial Attorney; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

BYBEE, Circuit Judge:

Petitioner Jose Jairo Escobar Santos (Escobar), a native and citizen of Guatemala, challenges the Board of Immigration Appeals' (BIA) determination that his forgery conviction under California Penal Code (CPC) § 470a constitutes an aggravated felony pursuant to the Immigration and Nationality Act (INA) § 101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R). On this issue of first impression, we hold that CPC § 470a is categorically an offense "relating to . . . forgery" under INA § 101(a)(43)(R). Accordingly, we deny the petition.

## I.  BACKGROUND

Escobar entered the United States without inspection in 2009. In 2015, police stopped him for running a red light. Escobar was subsequently charged with (1) using false documents to conceal his true citizenship (CPC § 114); (2) driving without a valid driver's license (California

Vehicle Code (CVC) § 12500(a)); (3) failure to stop at a red light (CVC § 21453(a)); (4) driving without a safety belt (CVC § 27315(d)(1)); and, (5) forgery of a driver's license (CPC § 470a). After Escobar pled guilty to the forgery count (CPC § 470a), the remaining counts were dismissed. Escobar was sentenced to three years in state prison, with 364 days to be served in actual custody, and two years and one day to be suspended and served on mandatory supervision.

Prior to Escobar's conviction, in 2012, the Department of Homeland Security (DHS) commenced removal proceedings against Escobar, charging him with being removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i) as a non-citizen present in the United States without having been admitted or paroled. Escobar conceded removability through counsel and applied for asylum, withholding of removal, protection under the Convention Against Torture (CAT), and, in the alternative, voluntary departure.

At the hearing before the Immigration Judge (IJ) in 2017, Escobar testified that he was afraid to return to his hometown of San Carlos Sija in Guatemala because gang members were extorting his family and burglarized his brother's home. Crediting Escobar's testimony, the IJ issued an oral decision denying his applications for asylum, withholding of removal, CAT protection, and voluntary departure. As pertinent to this appeal, the IJ found Escobar ineligible for voluntary departure because his forgery conviction under CPC § 470a constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(R). Escobar appealed to the BIA. The BIA denied his appeal, holding that Escobar's conviction under CPC § 470a is categorically a crime "relating to forgery" and thus an aggravated felony rendering him ineligible for

voluntary departure.[1]  Escobar's present petition challenges the BIA's determination that CPC § 470a constitutes an aggravated felony.

## II.  STANDARD OF REVIEW

We review questions of law de novo.  *See Toufighi v. Mukasey*, 538 F.3d 988, 992 (9th Cir. 2008).  "Although the BIA's interpretation of immigration laws is entitled to deference . . . its interpretation of the [CPC] . . . is not. *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 873 (9th Cir. 2008).  As such, "we apply de novo review to 'the issue of whether a particular offense constitutes an aggravated felony.'"  *Id*. (quoting *Ruiz-Morales v. Ashcroft*, 361 F.3d 1219, 1221 (9th Cir. 2004)).

## III.  DISCUSSION

A non-citizen is ineligible for voluntary departure if he has been convicted of an aggravated felony as defined by the INA.  8 U.S.C. § 1229c(b)(1)(C). Pursuant to the INA, an

---

[1] The BIA also "found no reason to disturb" the IJ's decision denying Escobar's application for withholding of removal and CAT protection. Because Escobar does not address these claims in his opening brief, he has waived any challenges to the denial of these applications, as well as the BIA's denial of his request for a continuance to pursue a provisional unlawful-presence waiver. *See Martinez-Serrano v. INS*, 94 F.3d 1256, 1259–60 (9th Cir. 1996).

With respect to Escobar's asylum claim, the IJ found him ineligible based on his aggravated felony conviction.  Although the BIA did not explicitly mention asylum in its decision, its finding that CPC § 470a is an aggravated felony necessarily forecloses any challenge to the IJ's denial of asylum.  In any event, Escobar does not discuss his asylum claim—or the BIA's apparent omission—in any detail.

"aggravated felony" includes, *inter alia*, "an offense relating to . . . forgery . . . for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(R).

We employ the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990), to determine whether a state conviction qualifies as an aggravated felony under the INA. *See Lopez-Valencia v. Lynch*, 798 F.3d 863, 867–68 (9th Cir. 2015). Under this approach, we first "compare the elements of the state offense to the elements of the generic offense defined by federal law." *Id.* at 867 (citation omitted). If the state statute "encompasses offenses that are narrower than or equal to the federal definition of 'an offense relating to . . . forgery,'" a conviction under the state statute qualifies as an aggravated felony. *Vizcarra-Ayala*, 514 F.3d at 874; *see also Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). However, where the state statute sweeps more broadly than the generic definition, there can be no categorical match and, likewise, no aggravated felony. *See Mathis*, 136 S. Ct. at 2248–49. In conducting this inquiry, "we examine what the state conviction necessarily involved, not the facts underlying the case." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013).

Here, we must compare the elements of CPC § 470a with the generic, common law definition of forgery. We have previously explained that the "essential elements of the common law crime of forgery are: (1) a false making of some instrument in writing; (2) a fraudulent intent; [and] (3) an instrument apparently capable of effecting fraud." *Vizcarra-Ayala*, 514 F.3d at 874 (internal quotation marks omitted) (brackets in original). The statute in question penalizes "[e]very person who alters, falsifies, forges, duplicates or in any manner reproduces or counterfeits any driver's license or

identification card issued by a governmental agency with the intent that such driver's license or identification card be used to facilitate the commission of any forgery." CPC § 470a.

Escobar's challenge focuses solely on the first element of § 470a—specifically, one who "alters, falsifies, forges, duplicates or in any manner reproduces or counterfeits . . . . " He argues that § 470a's first element sweeps more broadly than the generic definition because the "pr[o]scribed conduct encompasses . . . mere duplication or any manner of reproduction." That is, a person could be liable under § 470a for photocopying a genuine driver's license with the requisite intent, which, according to Escobar, is not an act covered by the generic definition.

We disagree that photocopying a driver's license with the intent "to facilitate the commission of any forgery" falls outside the generic definition of forgery. Our decision in *Vizcarra-Ayala* offers a helpful comparison. There, we addressed whether a separate provision of the CPC, § 475(c), constitutes an offense relating to forgery under the INA. 514 F.3d at 875–77. Section 475(c) provides that "[e]very person who possesses any completed check, money order, traveler's check, warrant or county order, *whether real or fictitious*, with the intent to utter or pass or facilitate the utterance or passage of the same, in order to defraud any person, is guilty of forgery." (emphasis added). Applying the categorical approach to § 475(c), we first determined that contemporary treatises, our sister circuits, and Supreme Court precedent plainly establish that "an essential element of the generic offense of forgery is the false making or alteration of a document, such that the document is not what it purports to be." *Vizcarra-Ayala*, 514 F.3d at 875.

We then held that § 475(c) encompasses broader conduct than the generic definition of forgery because it criminalizes the possession or use of *genuine* instruments with the intent to defraud but not to forge. *Id*. at 876–77; *see id.* at 875 (explaining that "forgery requires the falsification of a document or instrument"). We noted several instances in which California used § 475(c) to prosecute such conduct. *See id.* at 875–77. For example, California charged a woman under § 475(c) for attempting to cash a check she received in the mail issued to a youth foundation that had a storefront underneath her apartment. *Id.* at 876 (citing *People v. Viel*, No. D044101, 2005 WL 904806 (Cal. Ct. App. 4th Dist. Apr. 20, 2005)). Because the defendant endorsed the check with her own signature and did not alter the identity of the payee, the document was not falsified in any way. She might have been guilty of fraud, but she had not committed generic forgery. *See id*. Similarly, California prosecuted an office manager who was an approved signatory on the company's checking account for writing several checks for personal use, including one for "cash" on the company's bank account. *Id.* at 876–77 (citing *People v. Leonard*, No. G032720, 2004 WL 2610365 (Cal. Ct. App. 4th Dist. Nov. 17, 2004)). The manager may have committed generic embezzlement or theft, but her crime did not constitute generic forgery. That neither case involved false documents solidified our conclusion that § 475(c) encompasses "conduct that plainly is not generic forgery." *Id*. at 877.

There are marked differences between § 475(c) and § 470a. Section 470a plainly does not criminalize "possession"; rather, a separate provision of the CPC specifically prohibits the display or possession of a forged driver's license. *See* CPC § 470b. Nor does § 470a include § 475(c)'s reference to "real or fictitious" instruments.

Section 470a thus does not contemplate prosecution for conduct akin to attempting to cash a genuine, unaltered check—by say, representing another person's genuine driver's license as one's own. Unlike in *Vizcarra-Ayala*, Escobar does not offer—nor can we locate—any cases in which California has prosecuted individuals under § 470a for conduct involving genuine documents.[2]

Escobar points to § 470a's reference to "duplicat[ing] or in any manner reproduc[ing]" a driver's license or government ID as evidence that the statute sweeps too broadly. But California only punishes the duplication or reproduction of such identification when it is "used to facilitate the commission of any forgery." Escobar has not referred us to any evidence that California uses a broader

---

[2] Our dissenting colleague cites *People v. Brown*, 2010 WL 3871856, at *1 (Cal. Ct. App. 6th Dist. 2010) (unpublished) as an example of a case in which California prosecuted an individual under § 470a "where the identification card at issue appeared to be genuine." Dissent Op. at 17–18. In *Brown* the defendant pled no contest to the forged driver's license and checks; as such, his appeal did not concern or provide substantial information as to the specific facts giving rise to his § 470a conviction. 2010 WL 3871856, at *1.

In any event, we respectfully disagree with the dissent's reading of the case. *Brown* does not, as the dissent concludes, state that the defendant possessed another individual's genuine driver's license and merely presented it as his own, which would constitute fraud and not forgery. Rather, as we read *Brown*, the fact that the defendant had a driver's license with data that belonged to two different people is, by definition, indicative of some alteration, making the driver's license false. *See* 2010 WL 3871856, at *1 (stating that Brown had "a driver's license showing some data belonging to [Brown], but the license had been issued to a different person"). That is classic forgery.

definition of "forgery" than the generic understanding.[3] Thus, by definition, § 470a requires proof of a *false* writing capable of procuring fraud. A person who takes the affirmative step to photocopy a genuine document with the intent to deceive has made a false instrument—an action that falls squarely within the generic definition of forgery. We thus conclude that § 470a is categorically an offense "relating . . . to forgery" under INA § 101(a)(43)(R).

## IV. CONCLUSION

For the foregoing reasons, CPC § 470a constitutes an offense "relating to . . . forgery." The petition is **DENIED**.

---

[3] Nor do we have any concerns that § 470a's reference to "any forgery" incorporates § 475(c)'s broader definition of forgery. In the unlikely event that an individual is convicted under both statutes, an individual's conviction under § 470a remains an independent offense that matches the generic definition of forgery. So, for example, if an individual used a duplicated driver's license to pass a genuine, unaltered check in violation of § 475(c), in order to be convicted under § 470a that person would still need to use an altered ID to facilitate the crime. Stated otherwise, § 470a is itself a complete crime involving the falsifying of IDs and is not derivative of 475(c)'s broader definition involving "any completed check, money order, traveler's check, warrant or county order, whether real or fictitious[.]"

WHALEY, District Judge, dissenting:

This case presents the question of whether the proscribed conduct of one who "alters, falsifies, forges, duplicates or in any manner reproduces or counterfeits any driver's license or identification card" under California Penal Code (CPC) § 470a encompasses conduct that is broader than the "false making of some instrument in writing" under the federal common law definition of forgery. For the reasons set forth below, I conclude that CPC § 470a is broader than the federal definition; and in turn, Appellant Escobar Santos' (Escobar) underlying conviction does not qualify as an aggravated felony.  I respectfully dissent.

## I.  DISCUSSION

The Immigration and Nationality Act (INA) defines an "aggravated felony" as any one of a series of offenses, including "an offense relating to . . . forgery . . . for which the term of imprisonment is at least one year."   8 U.S.C. § 1101(a)(43)(R).   Whether an offense is an aggravated felony for purposes of the INA is a question of law this court reviews de novo. *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 872–73 (9th Cir. 2008).

In the present case, the Board of Immigration Appeals (BIA) determined that Escobar's conviction under CPC § 470a was categorically an aggravated felony making him ineligible for voluntary departure.

To determine whether Escobar's state conviction is one relating to forgery, and therefore qualifies as an aggravated felony under the INA, this court employs the categorical approach outlined in *Taylor v. United States*, 495 U.S. 575,

600 (1990). *Vizcarra-Ayala*, 514 F.3d at 874. Under this approach, the court looks only to the statutory definitions of the underlying crime and not the particular facts of the offender's case. *Taylor*, 495 U.S. at 600. First, the court determines whether the state statute encompasses conduct narrower than or equal to the federal definition of an offense relating to forgery.[1]  *Vizcarra-Ayala*, 514 F.3d at 874 (internal quotation marks omitted); *Taylor*, 495 U.S. at 599. If so, then a conviction of the state statute constitutes a conviction relating to forgery. *Vizcarra-Ayala*, 514 F.3d at 874. If the statute is overinclusive, the "modified categorical approach permits an examination of certain documents in the record 'to determine if the record unequivocally establishes that the defendant was convicted of the generically defined crime.'"  *Id.* (quoting *United States v. Corona-Sanchez*, 291 F.3d 1201, 1211 (9th Cir. 2002) (en banc)).

"Forgery developed from the common[]law crime of larceny and thus should be defined by its 'generic, core meaning.'"  *Vizcarra-Ayala*, 514 F.3d at 874 (quoting *Morales-Alegria v. Gonzales*, 449 F.3d 1051, 1054 (9th Cir. 2006)). The essential elements of the common law crime of forgery are "(1) a false making of some instrument in writing; (2) a fraudulent intent; [and] (3) an instrument apparently capable of effecting a fraud."  *Id.* (internal quotation marks and citation omitted) (brackets in original).

---

[1] For instance, in *Taylor*, the Supreme Court noted that state convictions for first degree or aggravated burglary are examples of crimes that are clearly narrower than the general definition of burglary. 495 U.S. at 599 (the generic definition having the basic elements of "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.").

Like the present case, in *Vizcarra-Ayala*, the non-citizen's challenge focused on the first element of common law forgery—the false nature of the document. 514 F.3d at 875. There, we held that forgery requires a lie about the document itself, and "the lie must relate to the genuineness of the document." *Id.* (citing 3 Wayne R. LaFave, Substantive Criminal Law § 19.7(j)(5) (2d ed.) [hereinafter "LaFave"]). Forgery requires "the falsification of a document or instrument." *Vizcarra-Ayala*, 514 F.3d at 875. "Forgery is a crime aimed primarily at safeguarding confidence in the genuineness of documents relied upon in commercial and business activity." *Id.* (quoting LaFave § 19.7(j)(5)).

"Where the falsity lies in the representation of facts, not in the genuineness of execution, it is not forgery." *Gilbert v United States*, 370 U.S. 650, 658 (1962); *see also Vizcarra-Ayala*, 514 F.3d at 875. According to the Tenth Circuit, shortly before the U.S. Supreme Court decided *Gilbert*,

> the words 'falsely made' and 'forged' are homogeneous, partaking of each other. They have always been synonymously construed to describe a spurious or fictitious making as distinguished from a false or fraudulent statement. The words relate to genuineness of execution and not falsity of content.

*Selvidge v. United States*, 290 F.2d 894, 897 (10th Cir. 1961).

As the majority notes, in *Vizcarra-Ayala* this court determined that CPC § 475(c) did not categorically match the definition of common law forgery because that statute criminalizes the possession of "real" documents with the requisite intent to defraud. 514 F.3d at 875. There, the

government contended the statute's reference to "real or fictitious" merely includes genuine document forms that contain a forged signature. *Id.* In rejecting this argument, this court considered actual instances where the State had prosecuted CPC § 475(c) cases in which the offenders had utilized genuine, unaltered documents. *Id.* at 876, & n.3.

Because CPC § 470a penalizes duplicating identification cards that are not falsely made, the statute sweeps more broadly than the federal common law definition of forgery. For instance, if an offender used a photocopy of an identification card with the requisite intent to defraud, he would be in violation of § 470a, but he would not be guilty of common law forgery because there would be no lie about the genuineness of the document itself.

For a court "to find that a state statute creates a crime outside the [federal] generic definition[,] . . . requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). The offender must point to his own case or other cases in which the state courts have applied the statute in a broader manner than the federal definition. *Id.* This court has held that when a "state statute explicitly defines a crime more broadly than the generic definition, no legal imagination is required to hold that a realistic probability exists . . ." that the state will prosecute conduct outside the generic definition. *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (internal quotation marks omitted) *abrogated by United States v. Stitt*, 139 S. Ct. 399, 406–07 (2018). In *Grisel*, this court held that the statute in question was overbroad simply by reviewing the

statutory text. *Id.*; *but see United States v. Rodriguez-Gamboa*, 972 F.3d 1148, 1154 (9th Cir. 2020) (holding that California's prohibition of possession of geometric isomers of methamphetamine did not make the state statute overbroad because such geometric isomers do not scientifically exist, and the State could not possibly prosecute their possession). The Oregon burglary statute in *Grisel* included entrance into places such as a booth, vehicle, boat, and aircraft, which were explicitly excluded from the federal definition of burglary.[2] 488 F.3d at 850.

The majority finds that CPC § 470a does not contemplate prosecution in the non-forgery context, for instance, when "representing another person's genuine driver's license as one's own." Majority Op. at 11. Although I generally agree that the typical CPC § 470a prosecution involves a fake or falsified identification,[3] California has successfully prosecuted at least one case where the identification card at

---

[2] The Supreme Court has subsequently held that a burglary statute's prohibited entry of a vehicle designed or adapted for overnight use does not render the statute categorically overbroad under the *Taylor* test. *Stitt*, 139 S. Ct. at 407.

[3] *See, e.g.*, *People v. Estournes*, 2009 WL 807568, at *1 (Cal. Ct. App. 2009) (unpublished) (§ 470a prosecution premised on identification card with appellant's picture glued on top of another picture); *Munoz v. Robertson*, No. 19-cv-00092-ODW, 2020 WL 4905845, at *2 (C.D. Cal. 2020) (unpublished) (§ 470a prosecution maintained when defendant attempted to purchase a vehicle at car dealership and dealership determined that the identification was forged because it failed multiple authenticity tests); *People v. Santos*, 2005 WL 3065868, at *1 (Cal. Ct. App. 2005) (unpublished) (§ 470a prosecution sustained when search warrant uncovered computer and other equipment for manufacturing false identifications).

issue appeared to be genuine.**[4]** *See People v. Brown*, 2010 WL 3871856, at \*1 (Cal. Ct. App. 2010) (unpublished). In *Brown*, law enforcement found defendant Robert Brown in possession of ten forged checks and "a driver's license showing some data belonging to defendant, but the license had been issued to a different person." *Id.* Brown was charged with possessing a forged driver's license with intent to use it to facilitate the commission of a forgery under CPC § 470a, and the California court of appeal affirmed his conviction. *Id.* The opinion makes no mention of the driver's license being falsely made; instead, it appears that Brown possessed another individual's genuine driver's license which he purported to be his own. *See id.* Under *Vizcarra-Ayala*, such possession would not constitute forgery because there was no lie relating to the genuineness of the document itself. 514 F.3d at 875.

Even though the plain text which prohibits "duplicating or in any manner reproducing" is sufficient to find that the statute is overbroad, there is nonetheless a realistic probability that California would apply CPC § 470a to conduct outside the common law definition of forgery. Accordingly, Escobar's underlying conviction does not constitute an aggravated felony under *Taylor*.

Even were this court to consider certain documents from the record under the modified categorical approach, my conclusion remains unchanged. There is no indication from

---

**[4]** California Rules of Court 8.1115 restricts citation of unpublished opinions in California courts. However, the unpublished cases in this dissent are not cited as precedent but rather as examples of what conduct California prosecutes under CPC § 470a. *See Vizcarra-Ayala*, 514 F.3d at 876 n.3.

the administrative record, and the government does not contend otherwise, that Escobar's conviction was indisputably for forgery—as opposed to non-forgery—conduct.

I would grant Escobar's petition for review and remand to the BIA to consider his appeal with the understanding that his conviction under CPC § 470a was not an aggravated felony.