In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 21-1201

JONATHAN AGUIRRE-ZUNIGA,

*Petitioner*,

*v.*

MERRICK B. GARLAND, Attorney General of the United States,

*Respondent*.

_____

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A089-508-923

_____

ARGUED NOVEMBER 2, 2021 — DECIDED JUNE 16, 2022

_____

Before SYKES, *Chief Judge*, FLAUM and JACKSON-AKIWUMI, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. Jonathan Aguirre-Zuniga became a lawful permanent resident of the United States in 2007. Approximately ten years later, he pled guilty to delivery of methamphetamine in Indiana. The Department of Homeland Security concluded that his conviction was an aggravated felony subjecting him to deportation, and the

Immigration Judge (IJ) and the Board of Immigration Appeals (BIA) agreed.

The question before the Court is whether the Indiana law prohibiting the delivery of methamphetamine criminalizes more conduct than the corresponding federal law given that Indiana defines "methamphetamine" in a way federal law does not. Aguirre-Zuniga's freedom to remain in the United States hangs in the balance. For when a state statute is broader than its federal counterpart, a conviction under that statute cannot trigger a noncitizen's deportation. We hold that Aguirre-Zuniga's conviction is not an aggravated felony for purposes of removal because the statute of his conviction is facially overbroad. We therefore grant Aguirre-Zuniga's petition, vacate the BIA's decision, and remand for further proceedings.

## I

Aguirre-Zuniga's family immigrated from Mexico to the United States when he was three years old. He resides in Indiana, where he has lived since he was eight years old and where he is now raising his own six-year-old daughter, an American citizen. He became a lawful permanent resident fifteen years ago. His primary language is English, and he has visited Mexico only three times since emigrating as a toddler.

In November 2018, Aguirre-Zuniga pled guilty to one count of dealing methamphetamine under Indiana Code § 35-48-4-1.1 (the "Indiana Statute").[1] Approximately one year

---

[1] The state court sentenced Aguirre-Zuniga to 12 years—four years in prison, four years in a community corrections program, and four years of probation. The prison term was suspended. The state court later issued an arrest warrant for Aguirre-Zuniga after he "failed to report to probation

later, the Department of Homeland Security sought to remove him to Mexico. The agency asserted that his conviction qualified as an aggravated felony; therefore, he was subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii). Aguirre-Zuniga filed a motion to terminate the proceedings. He argued that his conviction did not qualify as an aggravated felony because the Indiana statute was overbroad: it criminalized optical, positional, and geometric isomers of methamphetamine, while the corresponding federal offense criminalized only optical isomers.[2]

The IJ denied the motion to terminate, and Aguirre-Zuniga filed a motion for reconsideration. In denying the latter motion, the IJ reasoned that although the Indiana Statute was "facially overbroad," Aguirre-Zuniga was nonetheless removable because he had not demonstrated under the "realistic probability" test that the state had ever prosecuted a case based on positional isomers of methamphetamine.

The BIA affirmed the IJ's decision. The BIA stated that the categorical approach—used to determine whether a conviction is an aggravated felony for immigration purposes—focuses on the minimum conduct required to satisfy the elements of the state statutory offense. But the BIA held that Aguirre-Zuniga still had to show a "realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." According to the BIA, because Aguirre-Zuniga did not show that "the State court actually applied the statute to an offense

_____

due to being detained at an I.C.E. detention center" as part of the administrative proceedings at issue here.

[2] Aguirre-Zuniga does not discuss geometric isomers in his petition.

involving a substance that is not federally controlled," his conviction counts as an aggravated felony. Aguirre-Zuniga timely petitioned this Court for review of the BIA's decision.

## II

Aguirre-Zuniga's petition raises a question of law—whether the Indiana Statute is overbroad—therefore jurisdiction is proper. 8 U.S.C. § 1252(a)(2)(D). We review this issue de novo. *Garcia-Martinez v. Barr*, 921 F.3d 674, 681 (7th Cir. 2019). Because the BIA affirmed the IJ's decision but provided its own analysis, we review both decisions. *Dominguez-Pulido v. Lynch*, 821 F.3d 837, 841 (7th Cir. 2016).

### A. The Categorical Approach

Under the Immigration and Nationality Act (INA), the Department of Homeland Security may remove noncitizens for a variety of reasons, including if they commit an "aggravated felony at any time after admission" to the United States. 8 U.S.C. § 1227(a)(2)(A)(iii).

When the government seeks to remove a noncitizen under this statute, courts "employ a categorical approach by looking to the statute … of conviction, rather than to the specific facts underlying the crime." *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1568 (2017) (citation omitted). In this analysis, courts determine the minimal conduct criminalized by the state statute at the time of conviction by comparing the elements of the state statute with that of the federal analog. *Shular v. United States*, 140 S. Ct. 779, 783 (2020) (citation omitted); *Mellouli v. Lynch*, 575 U.S. 798, 808 (2015) (determining minimum conduct at the time of petitioner's conviction). When "the [state] statute is categorically broader than the federal definition" on its face, the conviction is not an aggravated felony. *United*

*States v. Ruth*, 966 F.3d 642, 647 (7th Cir. 2020), *cert. denied* 141 S. Ct. 1239 (2021); *United States v. De La Torre*, 940 F.3d 938, 951–52 (7th Cir. 2019).

The Supreme Court has divided the categorical approach into two distinct methodologies, which we have previously called the "generic-offense" method and the "conduct-based" method. *Ruth*, 966 F.3d at 646 (citing *Shular*, 140 S. Ct. at 783). The generic-offense method applies to statutes invoking common crimes, like burglary, and requires courts "to come up with a 'generic' version of a crime—that is, the elements of 'the offense as commonly understood.'" *Id.* The conduct-based method, on the other hand, applies to statutes "that do not reference a certain offense, but rather 'some other criterion' as the measure for prior convictions." *Id.* For example, where a noncitizen is subject to removal for prior convictions involving fraud or deceit, courts "look[] to whether the prior offense's elements 'necessarily entail fraudulent or deceitful *conduct*' as the appropriate measure." *Id.*

If the plain language of the state statute is ambiguous or has indeterminate reach, courts then turn to the "realistic probability" test, which acts as a "backstop." *Hylton v. Sessions*, 897 F.3d 57, 63 (2d Cir. 2018) (citation omitted); *Salmoran v. Attorney General*, 909 F.3d 73, 81–82 (3d Cir. 2018). Under this test, the petitioner "must at least point to [their] own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which [they] argue[]." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

In the agency proceedings below, the government asserted that even when a statute is facially overbroad under the categorical approach, noncitizens must still satisfy the realistic probability test. On appeal, the government wisely

concedes that courts first apply the categorical approach and look to realistic probability only if the statute is ambiguous.

Our holdings in *De La Torre* and *Ruth* make this clear. We applied the categorical approach and concluded that the state statutes at issue were overbroad. *Ruth*, 966 F.3d at 647; *De La Torre*, 940 F.3d at 951. The government raised "theoretical" challenges to this view in both cases, which we rejected. *See Ruth*, 966 F.3d at 648; *De La Torre*, 940 F.3d at 952. In *De La Torre*, the government argued that the statute was not overbroad because "geometric isomers of methamphetamine do not exist in the real world, and thus the [federal and state] statutes actually mirror each other." 940 F.3d at 951. We explained that this argument was irrelevant "when the plain language chosen by the Indiana legislature dictates that the Indiana statute is categorically broader than the federal definition of felony drug offense." *Id.* at 952. Likewise, the government suggested in *Ruth* that the state statute at issue was coextensive with federal law because "positional isomers of cocaine [do not] exist in the drug trade." 966 F.3d at 648. We noted that "[i]t is not the province of the judiciary to rewrite Illinois's statute to conform to a supposed practical understanding of the drug trade." *Id.* We then held that when "the state statute of conviction is plain and intentional, our job is straightforward: we compare the state statute to the federal recidivism statute at issue and ask only if the state law is the same as or narrower than federal law." *Id.*

To the extent there is any room for doubt in our case law, we reaffirm our statement in *Ruth*: If the statute is overbroad on its face under the categorical approach, the inquiry ends. *Id.* After applying the categorical approach, if the court determines that the statute is ambiguous or has indeterminate

reach, only then will the court turn to the realistic probability test. *See Gonzalez v. Wilkinson*, 990 F.3d 654, 660 (8th Cir. 2021) (citation omitted) (realistic probability test applies to "'conduct that falls outside the generic definition of a crime [and] operates as a backstop when a statute has indeterminate reach'"); *Swaby v. Yates*, 847 F.3d 62, 66 (1st Cir. 2017) (realistic probability test is a "sensible caution against crediting speculative assertions regarding the potentially sweeping scope of ambiguous state law crimes").

### B. The Indiana Statute

Having clarified the proper analysis, we turn to the Indiana Statute. The INA defines "aggravated felony" to include "illicit trafficking in a controlled substance (as defined in section 802 of Title 21)." 8 U.S.C. § 1101(a)(43)(B). This immigration statute reaches felony convictions under the federal Controlled Substances Act or a state statute "only if it proscribes conduct punishable as a felony under that federal law." *Moncrieffe v. Holder*, 569 U.S. 184, 188 (2013) (citation omitted). We therefore apply the conduct-based method of the categorical approach and look to see if the Indiana Statute covers substances not prohibited under federal law. *See Ruth*, 966 F.3d at 646–47 (citation omitted) (applying the conduct-based method to 21 U.S.C. § 841(b)(1)(C)'s sentencing enhancement and comparing the definitions of cocaine under Illinois and federal law).

Under federal law, methamphetamine is a Schedule II or III controlled substance that includes "its salts, isomers, and salt of isomers." 21 U.S.C. §§ 802(6), 812, Schedule II(c), Schedule III(a)(3). Under federal law, "isomer" of methamphetamine only refers to "the optical isomer." 21 U.S.C. § 802(14).

The Indiana Statute provides that someone commits a felony when they "knowingly or intentionally deliver[] … methamphetamine, pure or adulterated." Ind. Code § 34-48-4-1.1(a)(1)(A). The government states—and Aguirre-Zuniga does not contest—that delivery of a controlled substance in Indiana is analogous to trafficking under federal law. Schedule II of the Indiana Code criminalizes "[m]ethamphetamine, including its salts, isomers, and salts of its isomers." Ind. Code § 34-48-2-6(d)(2). The Indiana legislature did not define "isomer" at the time of Aguirre-Zuniga's conviction. The sole question for this Court, therefore, is whether, at the time of Aguirre-Zuniga's conviction, the definition of "methamphetamine" was broader under the Indiana Statute than federal law.

We analyzed an Indiana statute like the one at issue here in *De La Torre*. The defendant there was convicted of dealing methamphetamine under § 35-48-4-2. After looking to the definition of methamphetamine in Schedule II, we held that the statute was overbroad "[b]ecause the federal definition of methamphetamine includes only its optical isomers whereas the Indiana definition includes something more than just optical isomers of methamphetamine." 940 F.3d at 951.

Aguirre-Zuniga argues that *De La Torre* directly applies to his case, but that is not so easily done. First, the statute in *De La Torre* (§ 35-48-4-2) is not the one at issue here (§ 35-48-4-1.1). It is not a foregone conclusion that *De La Torre* controls. But second and more importantly, the Indiana legislature amended its criminal code in 2006 to specifically carve out methamphetamine crimes. Originally, methamphetamine-dealing crimes fell under § 35-48-4-1, which criminalized the delivery of "cocaine, or a narcotic drug, or methamphet-

amine, pure or adulterated, classified in schedule I or II." Ind. Code § 35-48-4-1 (2000). The Indiana legislature later excised methamphetamine from this statute and criminalized it under a new statute—the present Indiana Statute. *See* Ind. Legis. Serv. P.L. 151-2006, §§ 22–23 (July 1, 2006).

Notably absent from the new statute is the phrase "classified in schedule I or II [of the Indiana Code]," which was present in the *De La Torre* statute. *See* 940 F.3d at 950–51 (quoting Ind. Code § 35-48-4-2(a) (2000)). Aguirre-Zuniga argues that we should nonetheless refer to Schedule II again since that is the only place in the Indiana Code that defines "methamphetamine." Once we do so, Aguirre-Zuniga asks us to take note that the Indiana Code's use of the term "isomer" for methamphetamine in Schedule II included optical and positional isomers at the time of his conviction, while the federal statute covers only optical isomers.

Courts should read statutory provisions in the context of surroundings provisions. *Util. Ctr., Inc. v. City of Ft. Wayne*, 868 N.E.2d 453, 457 (Ind. 2007); *see Mellouli*, 575 U.S. at 809 (citation omitted) ("Statutes should be interpreted 'as a symmetrical and coherent regulatory scheme.'"). As noted above, the only definition in the Indiana Code regarding methamphetamine appears in Schedule II, and at the time of Aguirre-Zuniga's conviction, there was no reference to Schedule II and therefore no applicable definition of "isomer."

The plain language of a statute is "the best evidence" of the legislature's intent. *De La Torre*, 940 F.3d at 951 (citations omitted). An "isomer" is a substance that is "[c]omposed of the same elements in the same proportions, and having the same molecular weight, but forming different substances, with different properties (owing to the different grouping or

arrangement of the constituent atoms)." *See* "Isomer" and
"Isomeric," *Oxford English Dictionary*, Oxford Univ. Press (2d
ed. 1989), https://www.oed.com/oed2/00121969. Metham-
phetamine has optical and positional isomers, and metham-
phetamine itself exists in two isomeric forms, *l*-methamphet-
amine and d-methamphetamine, which themselves can be
combined into a potential third iteration known as a "racemic
mixture," dl-methamphetamine.[3]

With other drugs, the Indiana legislature criminalized
only certain types of isomers in Schedule I and other parts of
Schedule II. *See, e.g.*, Ind. Code §§ 35-48-2-4(d)(31) (covering
Schedule I THC), 35-48-2-6(d)(1) (covering amphetamine).
The definition of methamphetamine in Schedule II, however,
does not have a similar limitation on the types of isomers. Be-
cause the Indiana legislature chose to limit the types of iso-
mers defining other drugs but did not do so with metham-
phetamine, we must read the schedules to define metham-
phetamine as including at least optical and positional iso-
mers. *See De La Torre*, 940 F.3d at 951 (citation omitted) ("It is
a general rule of statutory construction that 'when the legisla-
ture uses certain language in one part of the statute and

---

[3] Jane Carlisle Maxwell & Mary-Lynn Brecht, *Methamphetamine: Here We Go Again?*, 36 Addictive Behaviors 1168, 1169 (2011); Douglas A. Morris, *Methamphetamine: Types, Forms, Effects, and the Federal Sentencing Guidelines*, 32 The Champion 20, 21 (2009); Nat'l Ctr. for Biotechnology Info., "PubChem Compound Summary for CID 10836, Methamphetamine," *PubChem*, https://pubchem.ncbi.nlm.nih.gov/compound/Methampheta-mine; *see also United States v. Bogusz*, 43 F.3d 82, 88–89 (3d Cir. 1994), *superseded by regulation*, U.S.S.G. § 2D1.1, amend. 518, *as recognized in United States v. DeJulius*, 121 F.3d 891, 894 (3d Cir. 1997).

different language in another, the court assumes different meanings were intended.'").

Moreover, as of July 1, 2020, the Indiana Code now defines "isomer" for methamphetamine as "an optical isomer." Ind. Code § 35-48-1-17.4(a). But at the time of Aguirre-Zuniga's conviction, that definition did not exist. By narrowing the definition of "isomer" with this new provision, the Indiana legislature recognized that the term was broader before 2020. *Cf. McCammon v. Ind. Dept. of Fin. Inst.*, 973 F.2d 1348, 1352 (7th Cir. 1992) (citing *K. v. G.*, 426 N.E.2d 129, 134 (Ind. Ct. App. 1981) and *Van Orman v. State*, 416 N.E.2d 1301, 1305 (Ind. Ct. App. 1981)) (noting that Indiana recognizes the "rule of statutory construction that the amendment of a statute, absent clear intent to the contrary, raises the presumption that the legislature intended to change the law.").

The government, on the other hand, sees the Indiana legislature's omission of the language referencing the schedules in 2006 as critical to its position. Without this language, the government argues, the Indiana Statute is merely silent as to what isomers, if any, it criminalizes. In the government's view, because the Indiana Statute does not include an explicit reference to the schedules, the statute does not cover *any* isomers, so the statute is not broader than federal law.

The government's view, however, begs the question: How does Indiana law define "methamphetamine"? The government's brief is mum on the issue. And, when asked at oral argument, the government responded that "meth means meth." But that recursive logic does not comport with the chemistry. Methamphetamine itself is comprised of two optical isomers. If the Indiana Statute does not cover *any* isomers, it arguably would not reach methamphetamine itself. Such a

view would render the Indiana Statute impotent—a criminal statute that criminalizes nothing. The government's position would have us drive the Indiana Statute into a no man's land. We decline to do so. The definition of methamphetamine from Schedule II proscribes the scope of the Indiana Statute.

### III

Because there are optical and positional isomers of methamphetamine, and the Indiana legislature chose not to limit the Indiana Statute to optical isomers at the time of Aguirre-Zuniga's conviction, "Indiana's generic use of 'isomer' in relation to methamphetamine must be broader than optical isomers." *De La Torre*, 940 F.3d at 951. Section 35-48-4-1.1 was facially overbroad at the time of Aguirre-Zuniga's conviction; thus, it does not qualify as an aggravated felony under the INA. We therefore GRANT Aguirre-Zuniga's petition, VACATE the BIA's decision, and REMAND the matter to the BIA for further proceedings consistent with this opinion.